IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22–cv–00460–CNS–MDB

REVEREND PAUL ELDER, an individual, and
THE CHRISTIAN GROWTH CENTER INC., a Colorado nonprofit corporation,

    Plaintiffs,

v.

THE CITY OF PUEBLO, COLORADO, a municipality,

    Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Maritza Dominguez Braswell**

This matter is before the Court on Plaintiffs' "Reverend Paul Elder and the Christian Growth Center's C.R.C.P. 106(a)(4) Opening Brief and Request for Oral Argument." (["Motion"], Doc. No. 27.) Defendant, City of Pueblo ("City") has filed an answer brief in opposition to the Motion. (["Response"], Doc. No. 32.) Plaintiffs have filed a reply brief in further support of the Motion. (["Reply"], Doc. No. 33.) The Motion has been referred to the undersigned, pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1, for a recommendation regarding disposition. (Doc. No. 28.) The Court has reviewed the briefs, the certified record of the proceedings, and the applicable law. For the reasons set forth below, the Court **RECOMMENDS** that the Motion be **DENIED**.

## STATEMENT OF THE CASE

Plaintiffs in this case are Reverend Paul Elder and The Christian Growth Center (collectively, "the Church"). The Church owns the property located at 1906 N. Hudson Avenue, Pueblo, Colorado. (["Complaint"], Doc. No. 3 at ¶ 10; ["Answer"], Doc. No. 13 at ¶ 10.) Plaintiffs allege that the Church "is a small Pentecostal congregation of Christians in East Pueblo, and Reverend Paul Elder has been the pastor of the Church for more than thirty years." (Doc. No. 3 at ¶ 1.) Plaintiffs also allege that, as part of its evangelism, the Church helps those who have "fallen on hard times," and welcomes "missionaries and traveling evangelists to Pueblo." (*Id.* at ¶ 2.) At issue in this suit is the service the Church provides to traveling evangelists. Specifically, the Church provides a "set of RV connections for traveling evangelists who come to the Church to preach revivals." (*Id.* at ¶ 3.) According to the Complaint, the Church "offers its RV hook-ups on a temporary basis to folks connected to the Church who are destitute and have no money for an RV park and no safe place to park their homes." (*Id.*) The Church calls this aspect of its hospitality ministry its "RV Evangelist Ministry." (*Id.*) In connection with this hospitality ministry, the Church hosts RVs on its property. (*Id.* at ¶ 29.) Plaintiffs allege that the Church "maintained its RV Evangelist Ministry for more than thirty years without incident or complaint, first at the O'Neal Avenue location and now at the North Hudson location." (*Id.* at ¶ 35.)

*The City's Notice of Violation*

On May 18, 2021, the City issued a Notice of Violation and Order to Correct to the Church. (["Notice of Violation"], Doc. No. 24-3 at PUEBLO 000040-42; *see also* Doc. No. 3 at

¶ 38; Doc. No. 13 at ¶ 38.) It noticed a violation of Pueblo Municipal Code § 17-4-27. (Doc. No. 24-3 at PUEBLO 000040.) That section provides that:

> No major recreational equipment shall be parked or stored on any street or street right-of-way for any period of time other than for the loading or unloading thereof. No such equipment shall be stored on any lot in a residential district in such a manner as to impede visibility of pedestrian or vehicular traffic. No such equipment shall be used for living, sleeping or housekeeping purposes when parked or stored on a residential lot, or in any location not approved for such use.

Pueblo Municipal Code § 17-4-27. The Notice of Violation ordered the Church to "to bring the violation(s) into compliance by: 06/16/2021," and stated that "[f]ailure to comply will result in the issuance of a summons to Municipal Court where up to a one thousand dollar ($1000) fine, and/or one (1) year imprisonment for each day the violation continues may be imposed." (Doc. No. 24-3 at PUEBLO 000041.) It also noted that the Church could appeal "to the Zoning Board of Appeals, as provided in Section 17-5-22 of the Pueblo Municipal Code." (*Id.*)

*The Church's Challenge to the Notice of Violation*

On July 29, 2021, Plaintiffs' attorney sent a letter to the City requesting that it withdraw the Notice of Violation pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the Free Exercise Clause of the First Amendment to the United States Constitution, and applicable case law. (Doc. No. 24-2 at PUEBLO 000013-15.) In its letter, Plaintiffs' attorney argued that the ordinance imposed a substantial burden on the Church's religious exercise, without a compelling governmental interest advanced by the least restrictive means. (*Id.* at PUEBLO 000014.) Plaintiffs' attorney also argued that the burden on the Church's religious exercise was based on an individualized assessment, violated the equal terms provision of RLUIPA, and constituted discrimination, because the ordinance was not evenly enforced on secular property owners. (*Id.*)

3

The City responded to Plaintiffs' attorney on August 11, 2021. (*Id.* at PUEBLO 000017-20). It took the position that the ordinance did not place a "substantial burden" on the Church because, for example, there were other RV parks in the area with reasonable rates. (*Id.* at 000017-18.) In addition, the City noted:

> The Ordinance also serves the compelling governmental interests of public health and safety, including the prevention and avoidance of crime and the provision of proper sanitation and adequate water. These are best provided by a mobile home park and so the code provisions are also the least restrictive means of furthering the City's compelling governmental interest.

(*Id.* at PUEBLO 000018.) The City's letter addressed other arguments, including claims of individualized assessment, concerns about equal terms, and allegations of discrimination. (*Id.* at PUEBLO 000018-19.) The City explained that the zoning officer had no discretion as to whether to issue the citation, and that variances were not allowed. (*Id.*) The City's letter also noted that the issuance of the citation was not based on a subjective determination, but an even application of the ordinance. (*Id.*) According to the City, by the time the citation was issued to the Church, the City had already issued forty-seven other citations for the same violation to private businesses and individuals. (*Id.* at PUEBLO 000019.) The City also highlighted its allegedly reasonable limitation:

> The Ordinance only applies to the parking of major recreational vehicles. It in no way totally excludes religious assemblies within the City's jurisdiction . . . There is nothing preventing [the Church] from performing its hospitality ministry. It may still house guests in the pastor's house or the houses of the congregation, temporarily allow RV hook-ups in line with the Policy and Ordinance, rent space for visitors at a mobile home park, or exercise hospitality through many other available avenues. The Ordinance does not create an unreasonable limitation on religious assembly.

(*Id.* at PUEBLO 000020.)

4

Plaintiffs allege that after the exchange of these letters, the Church and the City had a phone conference. (Doc. No. 3 at ¶ 41.) Then, on September 13, 2021, the City filed an enforcement action in Pueblo Municipal Court against the Church in connection with the Notice of Violation.[1] (*Id.* at ¶ 42; Doc. No. 13 at ¶ 42.) On September 20, 2021, Plaintiffs' lawyer e-mailed the following message to the City's lawyer:

> Trevor,
>
> Thanks for chatting with me just now. As I said on the call, Reverend Elder and the Christian Growth Center strongly desire to resolve without litigation the City's concerns regarding the part of the CGC's hospitality ministry that allows folks in difficult times to temporarily park an RV on the church's property. Our sincere hope is we can address the City's concerns about health and safety while allowing the ministry to continue as it has for more than three decades without incident. We would be happy to meet with you and any other City decisionmakers to work toward a solution without involving the courts.
>
> I also asked you to voluntarily dismiss without prejudice the municipal court action you have commenced against the Christian Growth Center while we (1) try to resolve this issue with the City informally and (2) at the same time pursue an appeal to the zoning board of appeals. You asked me to provide you the code provision that permits us to appeal to the zoning board. The notice of citation from Officer Willson states, "This Notice and Order may be appealed to the Zoning Board of Appeals as provided in Section 17-5-22, of the Pueblo Municipal Code." Section 17-5-22(a), in turn, says, "[a]ppeals . . . concerning interpretation or administration of this Title may be taken by any person aggrieved or by an officer or bureau of the governing body of the City affected by any decision of the Administrative Official. Such appeal shall be taken within a reasonable time, not to exceed thirty (30) days, by filing with the Administrative Official and with the Zoning Board of Appeals a notice of appeal specifying the grounds thereof." You mentioned that more than 30 days have expired since Officer Willson sent us the notice, and I explained that it was our understanding that our negotiations with you and the City were ongoing and thus the City had not made a final appealable decision that would trigger the thirty-day time period. You said you'd let us know no later than Wednesday 9/22/21 if the City (1) will voluntarily dismiss without prejudice the municipal-court action while we engage in informal discussions to address the City's concerns and (2) agree to give us thirty days from today (9/20/2021) to decide whether to file an appeal with the zoning board. We look forward to hearing from you soon.

---

[1] That municipal action has since been stayed. (Doc. No. 3 at ¶ 42; Doc. No. 13 at ¶ 42.)

> Best regards,
> Andrew

(Doc. No. 24-2 at PUEBLO 000022-23.) On September 24, 2021, the City's attorney responded with the following message:

> Mr. Nussbaum,
>
> The Christian Growth Center failed to timely appeal the Notice and Order and to exhaust its administrative remedies. The City must follow and enforce its ordinances and cannot show favoritism, allowing one party additional time to appeal when it does not do so for others and in contravention of ordinance. Your request for additional time to appeal the Notice and Order is denied.
>
> When the Christian Growth Center failed to appeal the Notice and Order or rectify the code violation, a Summons and Complaint to Municipal Court was served on the Center. This Summons and Complaint was provided in accordance with law. The Center has made no efforts to rectify the code violation, giving no grounds for dismissal of the Summons and Complaint. The City will not dismiss said Complaint at this time.
>
> Sincerely,
> Trevor D. Gloss

(*Id.* at PUEBLO 000021.)

*The Church's Appeal*

On September 30, 2021, Plaintiffs challenged the City's course of action by filing an appeal with the Zoning Board of Appeals of the City of Pueblo ("the Board"). (Doc. No. 3 at ¶ 55; Doc. No. 13 at ¶ 55; Doc. No. 24-2 at PUEBLO 000028-38.) In their appeal, Plaintiffs admitted and explained the factual basis for the zoning violation:

> The aspect of its hospitality ministry to provide RV hook-ups is the crux of the zoning dispute between the Church and the City of Pueblo. The Church offers, free-of-charge, a single set of RV hook-ups in its parking lot to traveling ministers, missionaries, and others. The Church has offered this ministry for the last thirty years—first at the O'Neal Avenue location and then for the last eleven years at its North Hudson Avenue location . . . Numerous people connected with the Church

6

> have used its RV ministry over the years. The typical stay is less than two weeks . . . Reverend Paul Hicks currently uses the Church's RV hook-ups. Reverend Hicks is the principal of the Church's on-site school. His RV, like all those that have come before it, is clean, safe, and sightly. See Exhibit F, pictures of Rev. Hicks's RV (Sept. 16, 2021) . . . The Church shows hospitality everyday—to the people of Pueblo, and to ministers and missionaries who need a clean and safe place to park their RV. The Church's RV hospitality ministry is essential to its religious identity and mission.

(Doc. No. 24-2 at PUEBLO 000029.) However, they argued that enforcement of the ordinance against them was contrary to law:

> Enforcement of § 17-4-27 against the Church violates the [RLUIPA] and the United States Constitution. RLUIPA prohibits enforcement of land-use regulations, like § 17-4-27, that impose a substantial burden on a church's ministry, such as the hospitality ministry of the Christian Growth Center. The Zoning Board is dutybound under Article VI of the Constitution to comply with RLUIPA, regardless of any local ordinances to the contrary.

(*Id.* at PUEBLO 000028.) The City argues the appeal was untimely, but the Board appears to have accepted it because a hearing was held on November 23, 2021. (Doc. No. 13 at ¶ 55; *see generally* Doc. No. 24-10.)

*The Board's Order on Appeal*

As reflected in the Board's Findings of Fact, Conclusions of Law and Order, the Board considered various provisions of the Pueblo Municipal Code, including §§ 17-4-27 and 17-4-51. (["Board's Order"], Doc. No. 24-10 at PUEBLO 000131-32.) It also noted its limited authority:

> Under no circumstances shall the Zoning Board of Appeals grant a variance <u>to allow a use not permissible under the terms of this Title</u> in the district involved, or any use expressly or by implication prohibited by the terms of this Title in said district.

(*Id.* at PUEBLO 000133 (emphasis in original) (quoting § 17-5-34(6)).) The Board recited some of the Church's RLUIPA and constitutional arguments, but noted that it did not "undertake[] an individualized assessment of Appellant's rights with respect to RLUIPA." (*Id.* at PUEBLO

000133-34.) Ultimately, the Board concluded that regardless of any such arguments, the Board was prohibited from allowing a "use" that was not permissible under the Zoning Code. (*Id.* at PUEBLO 000134.) The Board reasoned that the Zoning Code only permits the use of recreational vehicles for living or sleeping in a recreation park, and the Church is not in a recreation park or in an area zoned for recreation parks. (*Id.* at PUEBLO 000132.) Because the Board was not allowed to grant a variance for an impermissible use, it found that it did not have authority to do what the Church was asking it to do. (*Id.* at PUEBLO 000133-34.) The Board explained that "the outcome would be the same for both non-religious appellants and religious institutions." (*Id.* at PUEBLO 000134.) The Board denied the Church's appeal and issued its order on December 28, 2021. (Doc. No. 24-10.)

*The Litigation*

Plaintiffs filed the instant action against the City on January 24, 2022. (Doc. No. 3.) The matter was removed to this Court on February 23, 2022. (Doc. No. 1.) Plaintiffs bring six claims against the City: (1) Administrative Review Under Colo. R. Civ. P. 106(a)(4); (2) RLUIPA – Substantial Burden on Religious Exercise; (3) RLUIPA – Discriminatory Enforcement; (4) § 1983 – Free Exercise of Religion / Religious Animus; (5) § 1983 – Procedural Due Process; and (6) § 1983 – Free Exercise of Religion / System of Individualized Exemptions. (Doc. No. 3 at 10-14.) As relief, Plaintiffs request: "[a] determination, pursuant to C.R.C.P. 106(a)(4), that the Board and the City exceeded their jurisdiction and/or abused their discretion in denying the Church's Appeal," an "order . . . reversing the decision of the Zoning Board of Appeals," and an "injunction prohibiting the City from banning or otherwise substantially burdening the Church's

RV Evangelist Ministry." (*Id.* at 15.) They also seek attorneys' fees and costs, as well as unspecified damages. (*Id.*)

On March 11, 2022, the Honorable Regina M. Rodriguez entered an order granting the parties' Joint Motion to Bifurcate Claims, ordering that "Plaintiffs' claim for administrative review under Colorado Rule of Civil Procedure 106(a)(4) shall be determined first pursuant to the procedures for such claim," and staying "Plaintiffs' remaining claims under § 1983." (Doc. No. 21.)

On April 28, 2022, Plaintiffs filed this Motion for relief pursuant to Colo. R. Civ. P. 106(a)(4), arguing that the RV ordinance as applied to Plaintiffs violates federal law, and that the Board's *ex parte* communication with counsel for the City (during the Board hearing) violated due process. (Doc. No. 27.)

## LEGAL STANDARD

There is no dispute that the Board exercised quasi-judicial functions in denying the Church's appeal, and that this Court should review the Board's decision under Colo. R. Civ. P. 106(a)(4). (Doc. No. 3 at ¶ 81; Doc. No. 13 at ¶ 81.) Colo. R. Civ. P. 106(a)(4) provides:

> Where, in any civil matter, any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law . . . Review pursuant to this subsection (4) shall be commenced by the filing of a complaint.

*Id.* at 106(a)(4)(II). If "the court determines that the governmental body, officer or judicial body has failed to make findings of fact or conclusions of law necessary for a review of its action, the court may remand for the making of such findings of fact or conclusions of law." *Id.* at 106(a)(4)(IX). Importantly, however, a court's review is limited "to a determination of whether

9

the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer." *Id.* at 106(a)(4)(I). Indeed, there is a presumption of correctness afforded to the administrative body's conclusion. *Van Sickle v. Boyes*, 797 P.2d. 1267, 1272 (Colo. 1984) (citing *Hadley v. Moffat Cnty. Sch. Dist. RE-1,* 381 P.2d 938, 944 (Colo. 1984)).

Thus, the Court reviews the Board's decision on appeal, and the attendant record, for the limited purpose of determining whether the Board acted outside its jurisdiction or abused its discretion. *Friends of the Black Forest Reg'l Park, Inc. v. Bd. of Cnty. Comm'rs*, 80 P.3d 871, 876 (Colo. App. 2003). The Court will analyze this question independent of, and without regard to, the merits of Plaintiff's § 1983 and RUILPA claims for three reasons.

First, Colo. R. Civ. P. 106(a)(4) is only applicable when there is no other procedure or remedy at law available. *C Bar H, Inc. v. Bd. of Health ex rel. Jefferson Cnty.*, 56 P.3d 1189 (Colo. App. 2002) (finding that "[b]ecause § 25-1-513, the statute under which [the] action was brought, provides a legal remedy, C.R.C.P. 106(a)(4) [was] inapplicable"). Here, Plaintiffs' remedy for any alleged violations of the United States Constitution and RUILPA, are found under § 1983 and RUILPA and Plaintiffs have already brought those claims.

Second, courts have held that when a plaintiff seeks only injunctive relief, any separate § 1983 claims effectively merge into the Colo. R. Civ. P. 106(a)(4) claims. *See Norby v. City of Boulder*, 577 P.2d 277, 281 (Colo. 1978) (finding that plaintiffs were entitled to assert a timely action for declaratory and injunctive relief in addition to their Colo. R. Civ. P. 106(a)(4) action); *Friends*, 80 P.3d at 876 (finding that plaintiffs' declaratory judgment action to determine the application of a federal statute may proceed contemporaneously with its Colo. R. Civ. P.

106(a)(4) action). However, that is not the case here. In this case, Plaintiffs seek both injunctive relief *and* damages, and their request for damages is presumably tied to the separate (and now bifurcated) § 1983 and RLUIPA claims. Those claims need not be collapsed into this Colo. R. Civ. P. 106(a)(4) analysis. *Sundheim*, 904 P.2d at 1345 (finding that plaintiff's § 1983 claims seeking only monetary damages may proceed separately from the Civ. P. 106(a)(4) action).

Third, and closely related to the first and second reasons set forth above, the Honorable Regina Rodriguez bifurcated Plaintiff's § 1983 and RUILPA claims. (Doc. No. 21.) Thus, those claims (and any arguments related to those claims) cannot be resolved on this Motion. Pursuant to Judge Rodriguez's order, those claims must be adjudicated *after* resolution of this Motion. (*Id.*)

The only question before the Court, then, is whether the Board's denial of the Church's appeal should be set aside, pursuant to Colo. R. Civ. P. 106(a)(4), for abuse of discretion. In analyzing that question, the Court will afford the Board's decision a presumption of correctness. *Van Sickle*, 797 P.2d. at 1272. Plaintiff has the burden of overcoming this presumption. *See id.* at 1272-73 (finding that the plaintiff failed to demonstrate that the hearing officer abused his discretion).

## ANALYSIS

### I. Did the Board Abuse its Discretion?

Courts reviewing for abuse of discretion under Colo. R. Civ. P. 106(a) consider whether the quasi-judicial body's decision is supported by competent evidence. *Bd. of Cnty. Comm'rs v. Conder*, 927 P.2d 1339, 1343 (Colo. 1996). Here, the Board denied the Church's appeal based on

several findings set forth in the Board's Order. (Doc. No. 24-10.) Among other things, the Board found that:

1. Plaintiffs were issued a Notice of Violation and Order to Correct. (*Id.* at PUEBLO 000131.)

2. The subject violation prohibits the parking of major recreational equipment on a lot or location for living or sleeping, when that lot or location is not approved for that purpose, and only Recreation Parks are approved for that purpose. (*Id.* at PUEBLO 000131-32.)

3. The Church's property is not located in a Recreation Park and is in a zone that does not permit Recreation Parks. (*Id.* at PUEBLO 000132.)

4. Plaintiffs were essentially asking the Board to allow a use that was no permissible under the Zoning Code. (*Id.* at PUEBLO 000133-34.)

5. The Board does not have authority to allow a use not permitted by the Zoning Code. (*Id.* at PUEBLO 000134.)

These findings are supported by the certified record. For example, Plaintiffs admit in their appeal that they "provide RV hook-ups" to "numerous people," that the "typical stay is less than two weeks," and that as of the day the appeal was filed, a reverend continued to use the RV hook-ups on Plaintiffs' property. (Doc. No. 24-2 at PUEBLO 000029.) Moreover, during oral argument on this Motion, Plaintiffs' counsel confirmed what is apparent from the briefing—that Plaintiffs do not dispute the factual basis for the ordinance violation. (Doc. No. 27; Doc. No. 33.) Plaintiffs do not dispute, for example, that the Church is in a zone that does not permit Recreation Parks. (*Id.*) Instead of disputing the factual underpinnings, Plaintiffs circle back to

their RLUIPA and First Amendment arguments, contending that they are entitled to relief under Colo. R. Civ. P. 106(4)(a) because the Board failed to comply with federal law. (Doc. No. 27 at 21 (quoting U.S. Const. art. VI; *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1242 (11th Cir. 2004)).) However, as noted above, those arguments are not for this Court to resolve on this Motion.[2]

Applying the deferential standard of review required under Colo. R. Civ. P. 106(a)(4) and addressing only those claims that have not been bifurcated and stayed, the Court finds that the Board did not abuse its discretion when it denied Plaintiffs' appeal. The Board made sufficient findings and conclusions about the ordinance and its application, relied on competent evidence and Plaintiffs' own admissions about the Church's practices, and applied the facts and circumstances of the case to the ordinance at issue. (Doc. No. 24-10.) Plaintiffs' argument that the Board abused its discretion because the City failed to put forth competent evidence or witness testimony to rebut Plaintiffs' RLUIPA and § 1983 arguments is a substantive federal law

---

[2] The Court notes that, in their Reply, Plaintiffs argue the City has done an "about face" with respect to the appropriate vehicle for resolution, and that "[i]f the Church's federal rights were not capable of being determined in a Rule 106(a)(4) claim, the Church would not have agreed to a joint motion to bifurcate." (Doc. No. 33 at 7-11.) Although the City's apparently inconsistent positions are somewhat troubling, that issue is not relevant to the Court's determination under Colo. R. Civ. P. 106. During oral argument, Plaintiffs' counsel admitted that the arguments he seeks to make in support of those bifurcated and stayed claims are the very same arguments he makes in this Motion. (Doc. No. 37.) He also explained that the federal and state claims are pled "in the alternative." (*Id.*) Additionally, Plaintiffs' counsel stated that if this Motion is denied, he would advance the same arguments he has made here, under the currently stayed § 1983 and RLUIPA claims. (*Id.*) There is no question then, that Plaintiffs have an adequate remedy available to them under federal law, that they have already advanced those claims, and that in this case, Colo. R. Civ. P. 106(a)(4) is not the appropriate vehicle for resolving Plaintiffs' constitutional concerns.

argument dressed up as an "abuse of discretion," argument, and Plaintiffs have not met their burden on this Motion.

## II. Did the Board abuse its discretion when it entered into executive session?

Plaintiffs also argue that "[d]ue process requires that a participant in a quasi-judicial proceeding before a zoning board be permitted to hear and respond to all facts and legal arguments that influence the disposition of the case." (Doc. No. 27 at 23.) They argue that when the City's attorney requested to "go into a closed-to-the-public executive session so that [he] could advise the board on the law pertaining the [sic] Church's case," his closed-door communication with the Board constituted an *ex parte* communication in violation of due process. (*Id.* at 23-24.)

In response, the City cites *Hudspeth v. Board of County Commissioners*, 667 P.2d 775 (Colo. App. 1983) to say a similar argument was made in that case, and the district and appellate courts found the board's decision was not void because no decision was made in executive session. (Doc. No. 32 at 17.) The City does not analyze how *Hudspeth* applies here (other than to say the arguments are similar), or address any distinguishing factors, leaving the Court to do a more in-depth analysis itself and determine whether the outcome in *Hudspeth* should be the outcome here.

In *Hudspeth,* the Board of County Commissioners considered whether or not to grant a special use permit to a construction company. 667 P.2d at 776. During a public hearing on the issue, a group of landowners objected to the permit. *Id.* at 777. At the conclusion of the hearing, the Board of County Commissioners asked the Planning Commission to prepare a memorandum that would aid the Board of County Commissioners in its decision. *Id.* The memorandum

14

contained "relevant zoning regulations, statements of policy from the county master plan, and a number of conclusions as to whether the procedures had been followed, the conditions had been met, and opposing comments had been supported." *Id.* The Board of County Commissioners considered the memorandum during a closed session, where the author of the memorandum and the county attorney were both present. *Id.* After the closed session, the Board of County Commissioners transitioned to an open meeting and, on the record, voted to approve the permit application. *Id.* The *Hudspeth* plaintiffs brought an action under Colo. R. Civ. P. 106(a)(4), "alleging that the action taken by the Board violated the open meetings statute, was an abuse of discretion, and was in excess of their authority because of various procedural irregularities." *Id.* Both the district court and the appellate court ruled in favor of the county, finding that "no decision had been reached in the closed session and that the action was not void for that reason." *Id.*

*Hudspeth* is instructive, because like the board in *Hudspeth*, the Board here did not make a decision in executive session. However, *Hudspeth* concerned private parties on either side of the permitting argument. 667 P.2d at 778. By contrast, here, Plaintiffs advance one side of the argument, and the City advances the other. This is more like the dynamic in the case Plaintiffs cite, *Weissman v. Board of Education*, 547 P.2d 1267 (Colo. 1976). In *Weissman*, the county took an adversarial position against the plaintiff, and the court found that the county attorney acted "imprudently" when he went into executive session with the county's education board. *Weissman*, 547 P.2d at 1276. However, *Weissman* is also distinguishable, because the county attorney who took adversarial positions against the plaintiff was the *same* attorney who advised the board in executive session. *Id.*

Here, the attorney who took adversarial positions (e.g., rejected Plaintiffs' requests for withdrawal of the Notice of Violation, took the position that Plaintiffs' appeal was untimely, and signed the Response to the present Motion) is Trevor Gloss. The attorney who joined the Board in executive session is a different individual, Dan Kogovsek. This prevents the type of imprudence found in *Weismann*, and courts have held that government attorney offices may represent different bodies of the government. *See, e.g.*, *Johnson v. City Council*, 595 P.2d 701, 703-04 (Colo. App. 1979) (finding no due process violation, where the city attorney presented evidence at a hearing before the city council and then advised the city council on the legal issues, but did not participate in the substantive decision); *Paruszewski v. Twp. of Elsinboro*, 711 A.2d 273, 281 (N.J. 1998) (finding no conflict for township's attorney to oppose application pending before township's board of adjustment). Additionally, courts regularly find that government entities are entitled to advice of counsel and that executive session is an appropriate vehicle for preserving that privilege. *See, e.g.*, *Bjornsen v. Bd. of Cnty. Comm'rs*, 487 P.3d 1015, 1019-20 (Colo. App. 2019) (noting that a local public body can convene an executive session not open to the public for purposes of "receiving legal advice from an attorney").

Thus, while this case is not entirely like *Hudspeth*, it is also not entirely like *Weissman*. On these specific facts, the Court finds that neither the Board's decision to enter into executive session, nor Mr. Kogovsek's presence in executive session, gives rise to an abuse of discretion finding, because the Board did not make its decision during executive session, and because the attorney who advised the Board in executive session is not the same attorney that advanced (and continues to advance) positions that are adverse to Plaintiffs.

**WHEREFORE**, for the foregoing reasons, this Court respectfully

**RECOMMENDS** that Plaintiffs' "Reverend Paul Elder and the Christian Growth Center's C.R.C.P. 106(a)(4) Opening Brief and Request for Oral Argument" (Doc. No. 27) be **DENIED**.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir.

1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED: November 14, 2022.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge